# Exhibit  A

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
TEXAS – DALLAS DIVISION

| | | |
|---|---|---|
| LACHICA KING | § | |
| | § | |
| PLAINTIFF, | § | 3:11-CV-0138 |
| V. | § | |
| | § | *JURY TRIAL DEMANDED* |
| CACHE, INC. | § | |
| | § | |
| DEFENDANT. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff LaChica O. King, for her complaint against the defendant, respectfully shows the Court and alleges, as follows:

### NATURE OF THE ACTION

1.     This is an action for damages and injunctive relief caused by defendant's interference with plaintiff's rights to and under the Family Medical Leave Act of 1993 (FMLA), and defendant's retaliation against plaintiff for her exercise or attempted exercise of her rights under the FMLA as well as discrimination against plaintiff on account of race and because she exercised her rights to take FMLA leave, and the subsequent discharge from employment in retaliation for plaintiff's good faith opposition to a practice made illegal by Title VII of the Civil Rights Act of 1964, as amended, the Texas Commission on Human Rights Act (TCHRA), and in retaliation for plaintiff's protected activity in making a good faith race discrimination complaint, filing a charge of discrimination, and participation in the EEOC process.

### JURISDICTION AND VENUE

2.     This case was removed to this Court by defendant based on complete diversity of citizenship between plaintiff and defendant, and because the amount in controversy exceeds $75,000.  Venue is appropriate because some of the unlawful practices described herein were

committed within the State of Texas and in Dallas County, Texas, from where the case was removed.

## PARTIES

3.      Plaintiff LaChica King is an African American female citizen of the United States and a resident of the State of Texas.   Plaintiff was employed as an assistant manager by defendant Cache, Inc. at all times relevant to this suit.  Plaintiff was an "employee" of defendant within the meaning of 29 U.S.C. § 2611(2)(A) at time she requested a leave of absence from employment and when she requested the right to be restored to her position after her leave.

4.      Defendant is a New York corporation with its principal place of business in New York City, New York and doing business in Texas.   Defendant Cache, Inc. was the "employer" of plaintiff within the meaning of 29 U.S.C. § 2611(4)(A) at all times relevant to this action.

## CONDITIONS PRECEDENT

5.      Plaintiff filed a timely charge of discrimination in employment with the United States Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission Civil Rights Division (TWC-CRD) and all conditions precedent to her right to sue on these claims have occurred and been satisfied.  King satisfied all prerequisites to sue for her claims and there are no unfulfilled exhaustion requirements.

## FACTS

6.      On July 20, 2009, plaintiff sustained a high right ankle sprain and was unable to stand on her feet in heels which the job required.

7.      The next day, plaintiff advised her store manager Carol Keeler that she could not work for a few days while the ankle healed and asked for a few days off and then for a revised work schedule.

8. Keeler refused to permit plaintiff to go home, but told her she could sit down off her feet starting at 1:00 p.m. when a co-worker Bobbye Villanueva was scheduled to come to work.

9. On the same day, the district manager Mareatha Hornsby came into the store, saw plaintiff's swollen ankle and told her to go home for a few days.

10. The following week plaintiff returned to work, worked one day and was scheduled for additional days at work under a revised schedule.

11. Keeler removed plaintiff from the schedule for that Saturday and told her she could call on Sunday to get the new two-week schedule.

12. When plaintiff called on Sunday for the schedule, Keeler told her to call on Monday because Hornsby, the district manager, had instructed that plaintiff should apply for short-term disability.

13. On Monday, August 3, 2009, plaintiff called, but was unable to reach Keeler. However, plaintiff spoke to the co-manager April Baker and was told that she was not scheduled to work at all during the upcoming two weeks.

14. Plaintiff called defendant's human resources (HR) to find out how she could get put back on the schedule to return to work. HR informed the plaintiff that Hornsby should have notified her of plaintiff's leave of absence and that all she needed in order to return to work was a doctor's note. HR did not inform plaintiff whether or not the leave was FMLA qualifying or not or that the leave was being treated as FMLA leave.

15. Plaintiff called Keeler the next day to request that she be put back on the schedule and that she would be getting a doctor's note as instructed by HR. Keller cut plaintiff off and

told her that since she has already contacted HR, she would need to go thorough HR to get put back on the schedule to work.

16.     Plaintiff obtained a doctor's note and on August 28, 2009, presented it to Keeler and requested that she be put back on the schedule to work.

17.     Keeler said she would fax the note to HR and call the plaintiff to let her know when she would be back on the schedule.  To make sure it was received by HR, Plaintiff faxed the note to HR.

18.     Keeler called the plaintiff and said that the note was insufficient, and that the plaintiff needed to obtain a note stating plaintiff was under the doctor's care before she would put her back on the schedule.

19.     Plaintiff again contacted HR who said promised to contact Keeler about putting plaintiff back on the schedule.

20.     Keeler contacted the plaintiff and informed her that she would contact her after Labor Day with a new schedule and that she was not required to put plaintiff back on the schedule for two weeks.

21.     Although plaintiff continually called Keeler in an effort to return to work, Keeler did not return her call until September 10, 2009, when she was informed that she had finally been returned to the work schedule as of September 14, but that her work hours had been reduced from forty hours a week to thirty hours a week.

22.     Plaintiff questioned the reduction in hours and Keeler's response was that she could legally reduce plaintiff's hours to thirty.

23.     Plaintiff contacted HR about her reduction in her hours and was informed for the first time that her time off had been counted toward plaintiff's FMLA leave.

24.     Plaintiff questioned why if she her leave was FMLA protected, she had not been restored to her previous full-time schedule of forty hours a week.  HR agreed that plaintiff should have been given her full-time regular schedule of forty hours when she returned to work.

25.     Plaintiff continually questioned why she had not been returned to her regular full-time schedule of forty hours by calling HR and by repeatedly asking Keeler to schedule her for the additional ten hours.

26.     For eight weeks, plaintiff asked to be returned to her full-time schedule, but only during a week when Keeler was away was she schedule for an additional five hours.  Keeler continually manipulated the schedule so that plaintiff would only get thirty hours and in response to why plaintiff could no longer get more than thirty hours of work a week, but Keeler would repeat her mantra that legally all she had to do was permit the plaintiff to work thirty hours per week.

27.  On October 26, 2009, plaintiff filed the first discrimination complaint with the EEOC and TCHRA.

28.     After plaintiff filed with the EEOC, her hours were restored, but Keeler became very hostile toward the plaintiff.

29.     Plaintiff started taping her interactions with defendant's employees in an effort to protect herself from misrepresentations and lies.  For example, defendant's employees had represented to the Texas Workforce Commission that plaintiff had quit due to a medically verifiable illness which was not true.  Keeler was denying plaintiff the opportunity to return to work.

30.     Plaintiff informed Hornsby that Keeler and the co-manager Baker were discriminating against her and Hornsby said she would meet with them.   In fact, Hornsby appeared to be investigating plaintiff.

31.     When plaintiff met with Hornsby, she requested permission to record the meeting and was granted permission.

32.     Following this meeting on January 20, 2010, HR asked plaintiff to resign her employment, and plaintiff filed her second EEOC/TWC-HRC complaint.

33.     Defendant's employees were increasing hostile and engaged in severe retaliation against the plaintiff and on March 26, 2010, terminated her employment for the stated reason of severe insubordination by secretly recording her interactions with defendant's employees.

CLAIMS

Race Discrimination

34.     Plaintiff was subjected to race discrimination in her employment such that it altered the terms and conditions of her employment relationship with the Defendants and caused all of the above described harm to her.   Defendants' actions violated Title VII, TCHRA and 42 U.S.C. §1981, which prohibiting these actions.

Retaliation in violation of Title VII, TCHRA and 42 U.S.C. §1981

35.     Plaintiff was fired in retaliation for making and filing a charge of discrimination and harassment internally and with the EEOC and TWC-CRD, as well as participating in an investigation of the discrimination claim and opposing discrimination.   Her hours were reduced for the same reasons.   Defendants' actions caused violate the statutes prohibiting these actions.

FMLA Interference, Discrimination and Retaliation

36.     Defendants actions interfered with Plaintiff's FMLA rights and Defendant's actions discriminated against her for taking FMLA leave and retaliated against her for engaging in activity protected by the FMLA.

WHEREFORE, PREMISES CONSIDERED, plaintiff, LaChica O. King prays for compensatory damages for lost wages and fringe benefits, front pay, back pay, and loss of earning capacity; damages for emotional distress and physical distress; punitive damages; attorneys' fees and costs and prays for a jury trial on all issues so triable; and such further relief as this Court may deem just and proper.

Respectfully submitted,

s/ N. Sue Allen
N. Sue Allen, SBOT 00791992
Allen Law Firm
2200 Forest Park Blvd, Suite 107
Fort Worth, Texas 76110
(817) 926-5005
(817) 926-5165 (facsimile)
Email:  sue@sueallenlaw.com

Attorney for LaChica King

**CERTIFICATE OF SERVICE**

I certify that a true copy of this document was served on the following counsel of record via the Court's ECF filing system.

Mr. Reece L. Harrison
Ms. Cheryl Kirby
Oppenheimer, Blend, Harrison & Tate
711 Navarro, Sixth Floor
San Antonio, Texas 78205

s/  N. Sue Allen
N. Sue Allen